UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SCOTT D. J., <br>     Plaintiff(s), <br> v. <br> LEE DUDEK, <br>     Defendant(s). | Case No. 2:24-cv-01020-NJK <br> **ORDER** <br> [Docket No. 14] |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title XVI of the Social Security Act. Currently before the Court is Plaintiff's opening brief seeking an award of benefits or remand. Docket No. 14. The Commissioner filed a responsive brief in opposition. Docket No. 16. No reply was filed. The parties consented to resolution of this matter by the undersigned magistrate judge. *See* Docket Nos. 3-4.

**I.     STANDARDS**

    A.     Disability Evaluation Process

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). That determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] The second step addresses whether the claimant has a medically

---

[1] The five-step process is largely the same for both Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

determinable impairment that is severe or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### B. Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*.

## II. BACKGROUND

### A. Procedural History

On August 8, 2019, Plaintiff filed an application for disability benefits with an alleged onset date of January 1, 2005. *See, e.g.*, Administrative Record ("A.R.") 348-56, 358. On September 11, 2020, Plaintiff's application was denied initially. A.R. 168-71. On April 21, 2021, Plaintiff's claim was denied on reconsideration. A.R. 174-75. On May 12, 2021, Plaintiff filed a request for a hearing before an administrative law judge. A.R. 179. On May 19, 2022, and on January 25, 2023, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Kathleen Kadlec. *See* A.R. 53-132. On April 12, 2023, the ALJ issued an

unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 14-52. On April 4, 2024, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 1-6.

On May 31, 2024, Plaintiff commenced this suit for judicial review. Docket No. 1.

B.   The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920, as well as the drug addiction and alcoholism (DAA) analysis outlined in 20 C.F.R. § 416.935. A.R. 19-42. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2005. A.R. 20. At step two, the ALJ found that Plaintiff has the following severe impairments: schizoaffective disorder, seizure disorder, degenerative disc disease of the cervical spine, and substance abuse disorder. A.R. 20. At step three, the ALJ found that even with substance use Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 20-22. The ALJ found that, including Plaintiff's substance use, he has the residual functional capacity to

> perform medium work as defined in 20 CFR 416.967(c) except for the following limitations. The claimant can occasionally climb ladders, ropes or scaffolds. The claimant is limited to occasional motor vehicle operation or exposure to moving mechanical parts. The claimant can tolerate no unprotected heights. The claimant is limited to simple routine tasks with no more than end of day production requirements. The claimant can interact with supervisors frequently and interact with coworkers and the public occasionally. The claimant will be off task 15% or more of the workday due to substance abuse.

A.R. 22-30 (footnote omitted). At step four, the ALJ found Plaintiff had no past relevant work. A.R. 30. At step five, the ALJ found that jobs did not exist in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, and residual functional capacity. A.R. 30-31. In doing so, the ALJ defined Plaintiff as an individual closely approaching advanced age with at least a high school education. A.R. 30. The ALJ found the transferability of job skills to be immaterial. A.R. 30. The ALJ considered Medical Vocational

3

Rules, which provide a framework, along with vocational expert testimony that no jobs exist in significant numbers in the national economy that Plaintiff could have performed. A.R. 30-31.

The ALJ then conducted the analysis if Plaintiff did not use drugs or alcohol. The ALJ found that, absent the use of drugs or alcohol, Plaintiff has the residual functional capacity to

> perform medium work as defined in 20 CFR 416.967(c) except for the following limitations. The claimant can occasionally climb ladders, ropes or scaffolds. The claimant is limited to occasional motor vehicle operation or exposure to moving mechanical parts. The claimant can tolerate no unprotected heights. The claimant is limited to simple routine tasks with no more than end of day production requirements. The claimant can interact with supervisors frequently and interact with coworkers and the public occasionally.

A.R. 33-40. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, and residual functional capacity. A.R. 30-31. In doing so, the ALJ defined Plaintiff as an individual closely approaching advanced age with at least a high school education. A.R. 30. The ALJ found the transferability of job skills to be immaterial. A.R. 30. The ALJ considered Medical Vocational Rules, which provide a framework, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a janitor, housekeeper, and warehouse worker. A.R. 41-42. The ALJ concluded that substance abuse disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled absent the use of drugs or alcohol. A.R. 42. Because the substance use disorder is a contributing factor material to the determination of disability, the ALJ found that Plaintiff has not been disabled from the onset date to the date of the decision. A.R. 42.

Based on all of these findings, the ALJ found Plaintiff not disabled. A.R. 42.

**III.   ANALYSIS**

Plaintiff raises a number of issues on appeal in scattershot fashion, often with little supporting argument. Before turning to the resolution of the issues, the Court revisits some of the basics regarding briefing this appeal. "To establish eligibility for Social Security disability benefits, a claimant has the burden to prove he is disabled." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). On appeal, the claimant bears the burden of

4

establishing that the Commissioner erred below. *Ludwig v. Astrue*, 681 F.3d 1047, 681 F.3d 1047, 1054 (9th Cir. 2012). In addition, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009). A claimant waives any arguments not presented on appeal. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[B]ald assertions" supported by "little if any analysis" do not assist the reviewing Court in evaluating the issues on appeal. *See Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[2] Such undeveloped arguments are deemed waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996).

With those guiding principles in mind, the Court will address Plaintiff's arguments below.

A.     Substance Use

Plaintiff contends that the ALJ erred with respect to the consideration of his substance use, Docket No. 14 at 6-7, which the Commissioner contests, Docket No. 16 at 3-7. When the record contains significant evidence of alcohol or drug use, the ALJ must conduct a DAA analysis to determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. § 416.935. If DAA is a contributing factor material to the determination of disability, a claimant cannot be considered disabled for purposes of awarding benefits. *See, e.g.*, *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). "[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

---

[2] As explained by the Ninth Circuit:

> The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court. Particularly on appeal, we have held firm against considering arguments that are not briefed. But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so.

*Id.*

Plaintiff entered an in-patient drug treatment on May 20, 2019, *see* A.R. 2981, which is less than three months before filing his application, *see* A.R. 356-57. Plaintiff contends in bald fashion that the ALJ erred with respect to the DAA analysis because only substance use during the "relevant" period is considered and there was no evidence in the record of substance use after the application date. *Id.* The entirety of this argument is as follows:

> Where a history of DAA exists that is not relevant to the period under consideration, there is not even a need for a materiality determination. *See*, Social Security Ruling 13-2p, Q. 3.b. It is undisputed that [Plaintiff] has a history of DAA. However, there is no evidence of DAA since August 8, 2019, the application date.

Docket No. 14 at 7. Hence, Plaintiff's contention is predicated on a position that the months leading up to a claimant's application date are not part of the "relevant" period. Plaintiff fails to provide any legal authority or argument on that foundational issue.[3] Plaintiff has not shown that the ALJ erred in this respect.

Plaintiff contends that there is not substantial evidence to support the ALJ's determination that Plaintiff's substance use was a contributing factor material to the disability determination because there was no evidence of continued substance use after receiving drug treatment shortly before the application date. *See* Docket No. 14 at 7. The entirety of this argument is as follows:

> [Plaintiff] entered an in-patient drug treatment three months prior to his application for SSI. AR 2981-3027. The ALJ cites to no evidence of continued use of substances, observations of [Plaintiff] being under the influence or positive drug tests after beginning the intensive program to support her finding that [Plaintiff's] substance use was a contributing factor material to the disability determination. AR 23-28. This determination lacks the support of substantial evidence.

Docket No. 14 at 7. The purpose of conducting the DAA analysis is to determine "which of the claimant's disabling limitations would remain *if the claimant stopped using drugs or alcohol*." *Parra*, 481 F.3d at 747 (emphasis added). Hence, the key question is whether limitations would still exist absent the use of drugs or alcohol. Plaintiff provides no legal authority or argument

---

[3] As the Commissioner notes in response, the regulations provide for the collection and consideration of medical evidence of at least the 12 months preceding the application date. 20 C.F.R. § 416.912(b). There is a carveout if the claimant asserts a more recent disability onset date, *see id.*, but Plaintiff here is claiming an onset date from 2005.

explaining why it would be error for the ALJ to assess Plaintiff's lack of limitations exhibited when he was actually sober. Plaintiff has not shown that the ALJ erred in this respect.

### B.    Substantial Evidence for Off-Task Limitation Finding

The ALJ determined that Plaintiff would be off task for 15% or more of the workday when considering his substance use, but would not have that limitation without the substance use. *Compare, e.g.*, A.R. 22 *with* A.R. 33. Plaintiff asserts that "[t]he ALJ found no need to assess an off-task limitation absent substance use. AR 33, ¶ 12. This finding lacks the support of substantial evidence," Docket No. 14 at 8, which the Commissioner contests, *see* Docket No. 16 at 7. Plaintiff provides an overview of some of the evidence in the medical record. *See id.* at 8-9. Although unclear, it appears Plaintiff is contending that the evidence he now cites could substantiate a claim of disability. Plaintiff has not, however, attempted to grapple with the aspects of the medical record on which the ALJ relied in finding non-disability, nor has Plaintiff provided meaningful argument as to how his recitation of favorable aspects in the medical record establishes that the ALJ's contrary finding was unsupported by substantial evidence. "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997); *see also, e.g.*, *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision" (citations and internal quotations omitted)). Plaintiff has not shown that the ALJ erred in this respect.

### C.    Consideration of Opinions of Medical Providers

Plaintiff contends that the ALJ erred with respect to the opinions of various medical providers, *see* Docket No. 14 at 8-12, which the Commissioner contests, Docket No. 16 at 7-14. When evaluating medical evidence, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R § 404.1520c(a). The ALJ must "articulate how [she] considered the medical opinions

and prior administrative medical findings" based on certain specified factors. *Id.* The most important factors are supportability and consistency, which the ALJ must address. 20 C.F.R. § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2)). !

　　　　1.　　Dr. Strand

Plaintiff contests the ALJ's finding that Dr. Strand's opinions were partly persuasive. Docket No. 14 at 10. The argument presented consists of Plaintiff's statements that:

> To support her RFC assessment, absent substance use, the ALJ found the opinions of David Strand, Ph.D., the state agency physician on reconsideration, more persuasive than those found initially. AR 38, citing AR 161-162 [Exhibit 3A]. Dr. Strand was of the opinion that [Plaintiff] was moderately limited in various functions of understanding and memory, concentration and persistence and social interaction. Dr. Strand makes no reference to the August 2020 neuropsychological testing. These opinions were rendered in 2021 and do not represent a complete picture of [Plaintiff's] mental impairment through the date of the decision. *See, Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) and *Leslie v. Astrue*, 318 Fed. Appx. 591, 592 (9th Cir. 2009)) ("[T]he Ninth Circuit looks with skepticism on an ALJ's reliance on stale medical opinions that do not reflect subsequent deterioration in a claimant's condition.").

Docket No. 14 at 10. Hence, Plaintiff raises two issues with respect to Dr. Strand's opinion: (1) that it did not reference neuropsychological testing from August 2020 and (2) that it was impermissibly "stale" because it was rendered before the date of decision. With respect to the first issue, Plaintiff provides no legal authority or meaningful argument that Dr. Strand was required to consider that testing.[4] With respect to the "staleness" contention, there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Meadows v. Saul*, 807 Fed. Appx. 643, 647 (9th Cir. 2020); *accord Garner v. Saul*, 805 Fed. Appx. 455, 458 (9th Cir. 2020); *Jennings v. Saul*, 804 Fed.

---

[4] As the Commissioner notes in response, the governing regulations do not include such a requirement. *See* Docket No. 16 at 8-9 (citing 20 C.F.R. § 416.920c).

8

Appx. 458, 462 (9th Cir. 2020).  The mere fact that an opinion does not account for evidence that is not yet in existence cannot serve to automatically disqualify that opinion from constituting substantial evidence.  *Brand v. Kijakazi*, 575 F. Supp. 3d 1265, 1269 (D. Nev. 2021).  Such a rule could not exist as a practical matter and Plaintiff's motion does not otherwise develop an argument as to how Dr. Strand's opinion was impermissibly stale.[5]  Plaintiff has not shown that the ALJ erred in this respect.

### 2. Dr. Wood

Plaintiff contests the ALJ's finding that Dr. Wood's opinions were partly persuasive.  Docket No. 14 at 10-11.  The argument presented consists of Plaintiff's statements that:

> The ALJ found the opinions of Jeffrey Wood, Psy.D., the consultative examiner, partly persuasive.  AR 39, citing AR 2699-2706 [Exhibit 22F].  Dr. Wood would be able to perform some simple and minimal detailed tasks without special supervision and moderate difficulty with supervisors, peers and the public.  AR 2704-2705.  These opinions are inconsistent with the objective and clinical findings summarized herein.  [Plaintiff's] FSIQ was extremely low across all but one subtest.  His working memory and processing speed were extremely low, and he became taxed as cognitive complexity was added and worked slower with less accuracy to a marked degree.  AR 3347-3352.  Dr. Jensen observed that [Plaintiff's] memory was poor and he did not appear to have good insight into his mental illness or the purpose of his medications.  Dr. Wood reviewed minimal medical records, that did not include the August 2020 neuropsychological report.  AR 2701.  There was no psychological testing beyond a mental status exam, which has little useful value in determining a claimant's ability to maintain attention, concentration, persistence and pace over an 8-hour workday on a continuous basis.

Docket No. 14 at 10-11.  With respect to the contentions that Dr. Wood's review was incomplete or that conducting a mental status exam alone disqualifies his opinion, Plaintiff fails to provide any legal authority or developed argument.  With respect to the contention that Plaintiff can find evidence elsewhere in the medical record that might have supported a different opinion and that Dr. Jensen actually did render a different opinion, those circumstances do not demonstrate that the

---

[5] The Commissioner notes the inconsistency in Plaintiff urging that a 2021 opinion is too "stale" to be relied upon, while claiming elsewhere that the ALJ should have adopted a different opinion rendered even earlier in 2020.  Docket No. 16 at 8.

ALJ's consideration of Dr. Wood's opinions was erroneous. *See, e.g.*, *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Plaintiff has not shown that the ALJ erred in this respect.

### 3. Dr. Jensen

Plaintiff contests the ALJ's finding that Dr. Jensen's opinions were not persuasive. Docket No. 14 at 11. The entirety of Plaintiff's argument with respect to Dr. Jensen is as follows:

> The ALJ found the opinions of Dr. Jensen unpersuasive. AR 39, citing AR 3347-3352 [Exhibit 36F]. Dr. Jensen's opinions are supported by the findings on her examination. Dr. Jensen's opinions are also consistent with the longitudinal treatment record summarized herein.

Docket No. 14 at 11. These bald statements are insufficient to preserve any argument that the ALJ erred regarding the consideration of Dr. Jensen's opinions.

### 4. Nurse Practitioner Tom

Plaintiff argues that the ALJ erred in finding that Nurse Practitioner Tom's opinions were not persuasive. Docket No. 14 at 11-12. As argued by the Commissioner, *see* Docket No. 16 at 13-15, the ALJ discounted Tom's opinions on a number of grounds, including their inconsistency with Plaintiff's conservative treatment and improvement with medication, *see* A.R. 39-40. For example, the ALJ noted that Tom's assertion that Plaintiff had "almost a complete inability to function" was inconsistent with his level of care. A.R. 39. The ALJ also found that Tom's opinions were inconsistent in several ways with Tom's own treatment notes, as well as being inconsistent with the examinations of other practitioners. A.R. 39-40.

Plaintiff does not challenge the ALJ's reasoning in any direct fashion. Plaintiff instead states as follows:

> The ALJ found that opinions of AncyTom, PMHNP unpersuasive. AR 39 citing AR 3607-3612 [Exhibit 41F]. NP Tom noted that [Plaintiff] would be unable to meet competitive standards in various work functions. NP Tom also was of the opinion of that [Plaintiff] is unable to maintain independent plans without support from licensed staff. The mental status examinations throughout the medical record and test conclusions by Dr. Jensen support NP Tom's opinions. Clinical findings that were evidenced during her treatment sessions with [Plaintiff], such as paranoia, delusions, anxiety, hallucinations, and minimally communicative at times further bolster NP Tom's opinions. AR 3515, 3518-3519, 3523, 3526, 3533, 3534, 3537, 3538, 3540, 3548, 3552, 3565, 3568, 3578, 3585, 3592, 3599. [Plaintiff] has tried various psychotropic

      medications to control symptoms. AR 3528, 3536, 3539, 3542, 3546, 3549, 3553, 3556, 3559, 3563, 3566, 3570, 3573, 3576, 3580, 3582, 3586, 3590, 3593, 3597, 3599.

Docket No. 14 at 11-12 (footnote omitted and discussed below in Section III.D). As a threshold matter, Plaintiff does not challenge the ALJ's finding that Tom's opinions were inconsistent with the conservative nature of treatment and, more precisely, that someone with the limitations Tom identifies would be expected to have a higher level of care. As to inconsistency with the record, Plaintiff merely identifies instances in which the record might support Tom's findings, but Plaintiff fails to account for the contrary evidence on which the ALJ relied.[6] Again, the question before the Court is not whether substantial evidence might exist to reach a different outcome; the question is whether the ALJ's actual determination was predicated on substantial evidence. Plaintiff's contention on appeal does not address the pertinent inquiry. With respect to the effectiveness of treatment, Plaintiff fails to explain how a blanket statement that he "has tried various psychotropic medications to control symptoms" shows that there is not substantial evidence to support the ALJ's determination that Plaintiff's condition improved with treatment.

  Plaintiff has not shown that the ALJ erred in this respect.

  D.  <u>Alleged Partiality of ALJ</u>

  Plaintiff asserts in a footnote that his due process rights were violated by the ALJ acting in a biased manner, Docket No. 14 at 11-12 n.4, which the Commissioner contests, Docket No. 16 at 14-15. An ALJ is presumed to be impartial. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)). It is settled law that bias must generally be evidenced from some extrajudicial source; adverse rulings and snarky remarks made during case proceedings are generally insufficient. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). The allegation of bias must be presented "in the context of the whole case," *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001), and courts routinely reject allegations of bias "when isolated parts of an ALJ's conduct were challenged but the record as a whole showed

---

[6] A bit later, Plaintiff contends baldly that "[t]he ALJ failed to recognize the waxing and waning nature of [Plaintiff's] severe mental impairments." Docket No. 14 at 12. No legal authority or meaningfully developed argument is provided.

fundamental fairness for the litigants," *Bayliss v. Barnhart*, 427 F.3d 1211, 1215-16 (9th Cir. 2005) (collecting cases). The burden of showing bias is on the party raising the issue. *Verduzco*, 188 F.3d at 1089. The burden is "quite high." *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 885 (9th Cir. 1991); *see also Leazenby v. Colvin*, 654 Fed. Appx. 301, 302 (9th Cir. 2016).

Plaintiff's ill-developed accusation of bias comes nowhere close to the governing standards. Plaintiff argues that the ALJ was biased because she denied his eleventh-hour request for testimony from Nurse Practitioner Tom at a supplemental hearing set to address vocational expert issues. *See* Docket No. 14 at 11-12 n.4. As a starting point, Plaintiff makes no showing as to how the ALJ's resolution of this single request demonstrates bias when viewed in the context of the case as a whole. *See Bayliss*, 427 F.3d at 1215-1216.[7] Even taking this isolated issue standing alone, Plaintiff has shown no basis to find bias. The ALJ denied the request to postpone the supplemental hearing as both untimely and improper given the scope of that hearing. *See, e.g.*, A.R. 58 ("I am denying that. That is not a timely request. The purpose of this hearing is vocational issues . . ."). Consistent with the ALJ's reasoning, Plaintiff's own counsel below acknowledged that the request to present the nurse practitioner testimony was untimely, A.R. 57 (indicating that Plaintiff "indicated, at around 11 a.m. yesterday, that his psychiatrist wanted to testify. And I said look, it doesn't work that way, you know, we can't wait until the last minute and not provide any notice to the Judge"); *see also, e.g.*, A.R. 81-82, 341, and that Plaintiff's counsel was using a hearing on a different issue as a backdoor means to try to present this testimony, A.R. 83 ("My motive obviously is to have her testify if she's willing to do that, which is extremely rare. And I'm using the opportunity of having this hearing rescheduled for the VE issue. So yes, I mean, I concede and admit to that, that I'm, you know, trying to get any way to have another hearing so that she can answer questions about how she observes him"). Although one would think it should go without saying, an ALJ is not exhibiting bias against a claimant by ruling in a manner consistent with the claimant's own admissions.

---

[7] The Court notes that the ALJ issued a detailed decision spanning 26 pages of single-spaced text, A.R. 17-42, which includes an initial finding that Plaintiff would be disabled when considering limitations with his substance use disorder, A.R. 31.

12

Moreover and significantly, Plaintiff ignores on appeal that the ALJ provided Plaintiff an additional 14 days to submit any additional records, including a medical source statement from Nurse Practitioner Tom. *See, e.g.*, A.R. 58. The ALJ also "remind[ed] counsel that an administrative law judge may reopen a decision within a year for no reason." A.R. 40 n.8 (citing 20 C.F.R. § 416.1488(a)).[8]

Plaintiff's accusation of bias is unsupported.

## IV. NOTICE TO COUNSEL

"[I]t behooves counsel to learn from this misadventure that appealing just because you can is unprofessional, as is indiscriminately throwing fatuous . . . arguments against the wall to see if something sticks. Worse, to suggest to a client that claims and arguments like these have merit is beyond the pale . . . . In the final analysis, the most important thing an attorney can have is judgment, not a word processor." *Jeffries v. Las Vegas Metro. Police Dept.*, 713 Fed. Appx. 549, 553 (9th Cir. 2017) (Trott, J., concurring); *accord Gonzalez v. Saul*, 2019 WL 6569579, at *5 (D. Nev. Nov. 15, 2019).

## V. CONCLUSION

The decision below is **AFFIRMED**. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: February 26, 2025

_____
Nancy J. Koppe
United States Magistrate Judge

---

[8] Given the expectation that a witness will testify consistently with her written reports, the Court is not persuaded by Plaintiff's characterization of the ALJ's related footnote as being somehow nefarious. *See* Docket No. 14 at 11 n.4; *see also* A.R. 40 n.8 (ALJ footnote that, "[e]ven if PNP Tom did appear to testify to these limitations, it still would not be persuasive given how these reports conflict with her treatment notes and those of other providers as discussed above").